LEMMON, Judge.
John Neyrey has appealed from a judgment rejecting his demand for the return of certain jewelry pledged to secure a debt, or for the value of the jewelry, plus damages.
This litigation started when Hausmann’s, Inc. filed suit to collect a debt due by Ney-rey on an open account. A default judgment was rendered on September 11, 1968 in the amount of $7,140.00.
Neyrey testified' that his attorney withdrew from the case on September 20; that there was then pending a loan transaction, involving two lots in Danny Park, and it was necessary to remove the inscription of the judgment in favor of Hausmann’s in order to complete the loan; that on September 21, he employed another attorney, Jacob Karno, and authorized him to offer the pledge of two men’s rings, valued at a total of $2,100.00, and the mortgage of certain property on Citrus Road as security for the satisfaction of the judgment, if Hausmann’s would erase the inscription without prejudice to the judgment[1]; that Hausmann’s refused the offer, but counter-offered to do so if Neyrey would pledge one man’s ring and one lady’s ring, with a total value of $5,750.00; and that he reluctantly accepted that offer.
On September 27, 1968 Neyrey executed the act of pledge, which recited that he pledged the described jewelry to secure payment of the judgment on or before December 30, 1968, and that in case of default Hausmann’s could dispose of the property without recourse to judicial proceeding and apply the sale proceeds to Neyrey’s indebtedness. No mention was made of a mortgage on the Citrus Road property.
At the time of executing the act of pledge, Neyrey paid $700.00 on the indebtedness.
On October 4, 1968 Neyrey executed a conventional mortgage on the Citrus Road property in favor of Hausmann’s in the amount of $6,480.00.[2] The act, passed before Karno, recited that Hausmann’s loaned Neyrey $6,480.00 and that Neyrey executed a promissory note in that amount, payable on demand after December 30, 1968. The mortgage contained no reference to the earlier judgment or to the act of pledge.
The central dispute in this case is whether the debt secured by the pledge was paid off by the proceeds from the mortgage loan which created a new debt, as Neyrey contends, or whether the pledge and mortgage both constituted security for satisfaction of the judgment, as Hausmann’s contends.
*746 Neyrey’s contention is based on his testimony that when the act of mortgage was passed, Hausmann’s issued him a check in the amount of $6,480.00, which he endorsed back to Mr. Hausmann. He further testified that the “funds at that time were specifically to be applied to the outstanding judgment thereby releasing the pledge and the jewelry subject to the pledge.”
The record contains no evidence directly contradicting Neyrey’s statement that a check was issued and endorsed back, but Mr. Hausmann’s denial that there was ever any agreement for the pledge to be released upon execution of the mortgage can fairly be construed as denying the issuance of a check in accordance with the agreement.
In support of its contention, Hausmann’s points out that its attorney sent Neyrey a certified letter on January 7, 1969, notifying him of his default on the pledge agreement and reminding him of the mortgage “in addition to the above pledge”. Since Neyrey admittedly did not respond to the letter and did not personally inquire about the pledged property until July, 1972 (when he was informed that the property had been sold), Hausmann’s argues that Neyrey’s failure to inquire about the property for over three years indicates he could not have believed that the debt secured by the pledge had been paid and the property released. Hausmann’s also points out that on a list of creditors, prepared in connection with the 1970 foreclosure on the Citrus Road property, Neyrey noted as to Hausmann’s mortgage claim of $6,480.00: “Balance overstated — should be reduced by recovery from jewelry pledged”. Finally, Hausmann’s urges that a letter from Kar-no to its attorney, dated September 27, confirms the agreement for Neyrey to execute the pledge (prepared by Hausmann’s attorney), make a partial payment of $700.-00, “and further give to you a mortgage in the immediate future as soon as I have obtained a description of the said property and prepared same.”[3]
The only evidence supporting Neyrey’s position is (1) the mortgage, prepared by Neyrey’s attorney on’ a standard form, which referred to “borrowed money this day loaned and advanced” rather than to property sold on credit and converted into a judgment, thus when literally read indicating that a new debt was created, and (2) Neyrey’s testimony that the check issued at the passing of the mortgage paid off the earlier debt.[4] However, all other evidence, as well as logical reasoning, cries out for a contrary conclusion.
For us to accept Neyrey’s position, we would have to conclude Hausmann’s rejected an offer-for pledge of $2,100.00 in jewelry and the mortgage (in addition to retaining the judgment) and then two weeks later (after receiving jewelry of much greater value in pledge) agreed to accept the mortgage as the only security and to *747 release the pledge and the judgment.[5] Such reasoning defies logic.
Also overwhelmingly persuading in this regard is the mute evidence (1) that Ney-rey did not attempt to recover the jewelry until more than three years later and did not seek to have the judgment marked satisfied until this suit was filed,[6] and (2) that Neyrey noted the anticipated reduction of the mortgage balance “from jewelry pledged”.
The evidence greatly preponderates in favor of a conclusion that the mortgage was executed solely to secure payment of the 1968 judgment. Since we conclude the debt secured by the pledge was not paid by the proceeds of the mortgage loan, we find .no error in the trial judge’s ruling that Hausmann’s properly sold the pledged jewelry and applied the proceeds to the indebtedness. C.C. art. 3165.
Invoices indicated the jewelry originally sold for $5,525.00.[7] In addition, Haus-mann’s received $932.50 from the concur-sus proceeding in the foreclosure on the Citrus Road property. The total of $6,457.50 (plus the $700.00 payment) does not quite equal the principal amount of the 1968 judgment, but the trial judge in decreeing satisfaction of the judgment observed that “equity has been done all the way around”. Hausmann’s has not by appeal or answer to the appeal questioned that portion of the judgment.
The judgment is affirmed.

AFFIRMED.

. This offer was made by Karno’s letter of September 21.

. This sum, according to Hausmann’s attorney, reflected credit for the $700.00 payment (alleged in the pleadings to be $660.00).

. This letter was introduced by Neyrey with the contention (but no other evidence) that two attorneys listed on the letterhead were not practicing with the firm on September 27, 1972 (the names on the letterhead were different from those on the September 21 letter), thus implying that Karno actually prepared the letter at a later date.
The indirect implication is that Neyrey’s former attorney manufactured evidence against him. If there is proof of this, other consequences may follow in other forums. As to the merits of this case, however, Neyrey’s. attack on the letter can only defeat its value as evidence against him and cannot constitute evidence in his favor. In determining the sufficiency of Neyrey’s evidence as plaintiff, we simply disregard the September 27 letter in view of other overwhelming evidence as to the intention of the parties.

. In this regard we note that Neyrey issued a subpoena to Hausmann’s for production of all checks in. connection with the October mortgage loan, but did not request a return on this portion of the subpoena, nor did he question Mr. Hausmann on this phase of the transaction.

. The fact that Hausmann’s authorized erasure of the judgment after receiving the jewelry in pledge, but before the mortgage was executed, further indicates the creditor did not place much reliance on the security afforded by the mortgage.

. The judgment appealed from also decreed the 1968 judgment satisfied.

.In this respect Mr. Hausmann had no record or independent recollection at trial of the disposition of the jewelry six years earlier, but he did testify that such jewelry could not be sold as new and therefore would not have brought the same price as new jewelry.